**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IN RE: TESTOSTERONE REPLACEMENT          )
THERAPY PRODUCTS LIABILITY               )
LITIGATION                               )          Case No. 1:14-cv-1748
                                         )          MDL No. 2545
This Document Relates To:                )
                                         )
*Holtsclaw v. Endo Pharmaceuticals, Inc., et al.*  )
Case No. 1:15-cv-3941                     )

**DEFENDANTS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT ON STATE LAW GROUNDS**

Andrew K. Solow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Phone: (212) 836-7740
Fax: (212) 836-6776
Email: andrew.solow@apks.com

Pamela J. Yates (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Phone: (213) 243-4178
Fax: (213) 243-4199
Email: pamela.yates@apks.com

***Attorneys for Endo Pharmaceuticals Inc.,***
***Auxilium Pharmaceuticals, LLC (f/k/a Auxilium***
***Pharmaceuticals, Inc.), and GlaxoSmithKline***
***LLC***

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF UNDISPUTED FACTS ............................................................................... 3

    A.    Mr. Holtsclaw's Use of Testim to Treat his Hypogonadism .................................. 4

    B.    Mr. Holtsclaw's Heart Attack ................................................................................. 5

STANDARD OF REVIEW ....................................................................................................... 5

ARGUMENT ............................................................................................................................. 6

I.     PLAINTIFF CANNOT SATISFY HIS BURDEN TO PROVE CAUSATION, WHICH IS AN ESSENTIAL ELEMENT OF EACH OF HIS CLAIMS ......................... 6

II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON EACH OF PLAINTIFF'S CLAIMS FOR REASONS INDEPENDENT OF HIS FAILURE TO ESTABLISH CAUSATION.......................................................................................... 8

    A.    The Court Should Grant Summary Judgment on Plaintiff's Design Defect Claim Because Plaintiff Cannot Satisfy His Burden to Identify any Such Defect...................................................................................................................... 8

    B.    The Court Should Grant Summary Judgment on Plaintiff's Fraud and Negligent Misrepresentation Claims Because Plaintiff Cannot Satisfy His Burden to Show That Dr. McLaughlin Prescribed Testim in Reliance on any Alleged Misrepresentation by Auxilium ........................................................... 9

    C.    The Court Should Grant Summary Judgment on Plaintiff's Claim for Breach of Express Warranty Because Plaintiff Cannot Satisfy His Burden to Identify any False Affirmation of Fact ............................................................. 11

    D.    The Court Should Grant Summary Judgment on Plaintiff's TCPA Claim Because that Statute Does Not Permit Recovery of Personal Injury Damages.................................................................................................................. 12

III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF ENDO AND GSK........................................................................................................... 13

    A.    Endo and GSK Did Not Manufacture or Sell Testim ........................................... 13

    B.    Plaintiff's Expert Admits that GSK Did Not Do Anything that Could Render it Liable.................................................................................................... 14

CONCLUSION........................................................................................................................ 15

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*BP Environmental Servs., Inc. v. Republic Servs., Inc.*,
946 F. Supp. 2d 402 (E.D. Pa. 2013) .......................................................................13

*Carter v. Danek Med., Inc.*,
No. CIV. 96-3243-G, 1999 WL 33537317 (W.D. Tenn. June 3, 1999) ..........................2, 9, 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..............................................................................................5

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ............................................................................................1, 7

*Downs v. Perstorp Components, Inc.*,
26 Fed. App'x. 472 (6th Cir. 2012) .........................................................................7

*Fleming v. Janssen Pharm., Inc.*,
186 F. Supp. 3d 826 (W.D. Tenn. 2016) ..................................................................2, 12

*Fulton v. Pfizer Hosp. Prods. Group, Inc.*,
872 S.W.2d 908 (Tenn. Ct. App. 1993) ...................................................................8

*Hafer v. Medtronic, Inc.*,
99 F. Supp. 3d 844 (W.D. Tenn. 2015) ....................................................................10

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
Case No. C 1748, 2017 WL 1836435 (N.D. Ill. May 8, 2017) .....................................1, 5, 6, 9

*Kirkbride v. Lisbon Contractors, Inc.*,
555 A.2d 800 (Pa. 1989) ......................................................................................15

*Langford v. Gatlinburg Real Estate & Rental, Inc.*,
499 F. Supp. 2d 1042 (E.D. Tenn. 2007) .................................................................8

*Lind v. Beaman Dodge, Inc.*,
356 S.W.3d 889 (Tenn. 2011) ................................................................................8

*Memphis Bank & Trust Co. v. Water Servs., Inc.*,
758 S.W.2d 525 (Tenn. 1988) ...............................................................................3, 14

*Nozinich v. Johnson & Johnson, Inc.*,
No. 09-02015 DKV, 2011 WL 13124085 (W.D. Tenn. July 6, 2011) ..............................7

*Nye v. Bayer Cropscience, Inc.*,
    347 S.W.3d 686 (Tenn. 2011).................................................................6

*Pittman v. Upjohn Co.*,
    890 S.W.2d 425 (Tenn. 1994)..............................................................9

*Pride v. BIC Corp.*,
    218 F.3d 566 (6th Cir. 2000) ............................................................6, 7

*Richardson v. GlaxoSmithKline*,
    412 F. Supp. 2d 863 (W.D. Tenn. 2006)............................................7, 8

*Rotello v. Clayton Homes of Del., Inc.*,
    No. 3:03-CV-573, 2006 WL 2771078 (E.D. Tenn. Sept. 25, 2006)........................15

*Strayhorn v. Wyeth Pharm., Inc.*,
    737 F.3d 378 (6th Cir. 2013) ............................................2, 11, 12, 13

*United States v. Am. Mercantile Corp.*,
    889 F. Supp. 2d 1058 (W.D. Tenn. 2012)......................................13, 14

**Statutes**

Tenn. Code Ann. § 29-28-101, *et seq.* ..............................................6

Tenn. Code Ann. § 29-28-102(4).......................................................13

Tenn. Code Ann. § 29-28-102(7).......................................................13

Tenn. Code Ann. § 29-28-106 ..........................................................13, 14

**Rules**

Fed. R. Evid. 702 ..............................................................................1, 7

Fed. R. Civ. Proc. 56(c) ...................................................................5

**Other Authorities**

Restatement (Third) of Torts ...........................................................8

## PRELIMINARY STATEMENT

When Plaintiff Steven D. Holtsclaw was diagnosed with ████████ in December 2013 he began taking Testim.  Mr. Holtsclaw stopped taking Testim after July 3, 2014 when he had a heart attack, which he alleges was caused by his Testim use.  Mr. Holtsclaw seeks economic, non-economic, and punitive damages allegedly arising from his Testim use and heart attack.  The Court should grant summary judgment because Mr. Holtsclaw cannot establish essential elements of each of his claims.

First, Plaintiff cannot establish that his Testim use proximately caused his heart attack, which is an essential element of each of his claims.  Prior to his heart attack, Mr. Holtsclaw had numerous medical conditions that put him at risk for cardiovascular disease, ████████ ████████████████████████████████████ ████████████████████  As demonstrated in the contemporaneously filed motion to exclude testimony of Plaintiffs' experts, Mr. Holtsclaw has not offered expert testimony on the issue of medical causation that satisfies the requirements for admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Second, the Court should grant summary judgment on Plaintiff's design defect claim because he has not identified any such defect in Testim.  Plaintiff's design defect claim is "just a repackaging of [his] off-label marketing claims."  *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, Case No. C 1748, 2017 WL 1836435, at *20 (N.D. Ill. May 8, 2017).  Plaintiff has not identified any defect in the design of Testim that allegedly caused his heart attack.

Third, the Court should grant summary judgment on Plaintiff's fraud and negligent misrepresentation claims because he cannot establish that either he or his prescribing physician, Dr. Marion Dean McLaughlin, relied on any alleged misrepresentation of Auxilium, which is an

essential element of his claims. *See Carter v. Danek Med., Inc.*, No. CIV. 96-3243-G, 1999 WL 33537317, at *5–7 (W.D. Tenn. June 3, 1999). Dr. McLaughlin testified that he did not recall Auxilium sales representatives providing him with any information he thought to be false or encouraging him to prescribe Testim for off-label conditions. And Mr. Holtsclaw testified that he had not seen any advertisements or promotional material for Testim or any other testosterone product prior to Dr. McLaughlin prescribing Testim for him.

Fourth, the Court should grant summary judgment on Plaintiff's claim for breach of express warranty because Plaintiff cannot establish the elements of that claim where, as here, he does "not identify any affirmation of fact made on the product labeling that [he] allege[s] to be *false*; rather, [he] allege[s] that the labeling was *inadequate*." *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 395 (6th Cir. 2013) (emphasis by court). In addition, Plaintiff cannot establish that Dr. McLaughlin was induced to prescribe or that he was induced to use Testim by any alleged false statement of Auxilium.

Fifth, the Court should grant summary judgment on Plaintiff's claim under the Tennessee Consumer Protection Act ("TCPA") because the statute does not permit recovery of damages for personal injury. *See Fleming v. Janssen Pharm., Inc.*, 186 F. Supp. 3d 826, 834 (W.D. Tenn. 2016).

Sixth, the Court should grant summary judgment for Endo Pharmaceuticals Inc. ("Endo") and GlaxoSmithKline LLC ("GSK") on each of Plaintiff's claims for the independent reason that neither is a manufacturer or seller of Testim as required to impose liability under the Tennessee Products Liability Act ("TPLA"). *See Strayhorn*, 737 F.3d at 403. Endo acquired Auxilium in January 2015 after Mr. Holtsclaw stopped using Testim. It neither manufactured nor sold Testim. Indeed, it is well-settled that Endo's ownership of Auxilium does not render it liable for

Auxilium's actions all of which predated Endo's acquisition.  GSK was a party to a co-promotion agreement with Auxilium from May 2012 until August 2013.  GSK did not manufacture Testim, and its status as a co-promoter of Testim did not render it a seller.  *See Memphis Bank & Trust Co. v. Water Servs., Inc.*, 758 S.W.2d 525, 526 (Tenn. 1988).

For all those reasons, explained in greater detail below, the Court should grant summary judgment on each of Plaintiff's claims.[1]

## STATEMENT OF UNDISPUTED FACTS

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████  McLaughlin Dep. ("Ex. 1") at 34:7–11, 36:23–38:4, 73:22–74:4, 76:4–13; Holtsclaw Dep. ("Ex. 2") at 128:24–129:2, 130:4–8, 131:2–9, 143:9–17, 148:4–8; Ex. 3; Ex. 4; Ex. 5 at 63.  ██████████████████████

████████████████  Ex. 1 at 36:15–22, 38:5–8.  ██████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████  *Id.* at 112:7–114:12, 128:5–7.  ████████████████████

██████████████████████████████████████████████████  *Id.*

██████████████████████████████████████████████████████

---

[1] In addition, the Court should grant summary judgment because Plaintiff's claims are preempted by federal law as explained in Defendants' contemporaneously filed motion for summary judgment on the ground of preemption.



Ex. 2 at 191:10–192:2; Ardehali Dep. ("Ex. 6") at 177:22–178:24.

### A. Mr. Holtsclaw's Use of Testim to Treat his Hypogonadism

Ex. 2 at 169:1–20, 179:19–24; Ex. 1 at 40:19–41:13; Ex. 7 at 28; Ex. 8 at 23.

Ex. 1 at 22:7–23:17.[2]

Ex. 8 at 23; Ex. 2 at 180:1–3, 180:12–21, 183:10–20, 184:19–185:5; Ex. 1 at 54:2–18. Dr. McLaughlin diagnosed Mr. Holtsclaw with ▮▮▮▮▮ and prescribed Testim based on Dr. McLaughlin's assessments of the potential risks and benefits. Ex. 8 at 24; Ex. 2 at 183:22–184:1; Ex. 1 at 26:23–28:10, 57:3–11, 108:5–17.[3]

Ex. 1 at 59:22–60:16.

---

[2] Dr. McLaughlin has treated about 150 men for hypogonadism. Ex. 1 at 21:24–22:6. The signs and symptoms of hypogonadism include profound fatigue, weight changes, decrease in muscle mass, erectile dysfunction, low libido, and depression. Hypogonadism can be associated with obesity, elevated lipids, and increased blood sugar, which, in turn, are risk factors for cardiovascular disease. *Id.* at 25:11–26:1. Dr. McLaughlin continues to prescribe Testim to treat men with hypogonadism. *Id.* at 27:17–19.

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮ Ex. 9 at 594; Ex. 1 at 67:6–11.

████████████████████████████████████████████████████ Ex. 2 at 242:10–12.  Prior to that time, Mr. Holtsclaw had never heard of Testim and did not know anything about testosterone.  *Id.* at 180:4–11, 240:20–241:5.  He had not seen any advertising or promotional material for Testim or any other testosterone product prior to or during his use of Testim.  *Id.* at 29:19–21, 241:17–242:9.

████████████████████████████████████████████████

████████████████████████████████████████ *Id.* at 187:19– 188:9.  Mr. Holtsclaw's Testim use successfully accomplished those goals.  ████████████

██████████████████████████████████████████████████

████████████ *Id.* at 189:9–191:8; Ex. 1 at 60:17–61:5.

## B.  Mr. Holtsclaw's Heart Attack

On July 3, 2014, Mr. Holtsclaw had a heart attack.  Ex. 2 at 196:15–19.  ████████████

████████████████████████████████████ *Id.* at 228:24–230:1.  ████████████

██████████████████████████████████████████████████

████████ Ex. 10 at 608; Ex. 11 at 69; Ex. 2 at 233:17–234:1, 261:8–15; Ex. 1 at 80:12–81:4.  ██

██████████████████████████████████████████████████

████████████████████████ Ex. 2 at 234:23–235:23.  ████████████

██████████████████████████████████████ Ex. 11 at 69; Ex. 2 at 262:16–24.  ████████████████████████████████████

████████████ *Id.* at 277:3–11.

## STANDARD OF REVIEW

As this Court has explained, summary judgment is appropriate when, construing the facts in the light most favorable to the non-moving party, "there is no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law."  *In re Testosterone*

*Replacement Therapy Prods. Liab. Litig.*, Case No. 14 C 1748, 2017 WL 1836435, at *7 (N.D.

Ill. May 8, 2017) (citation omitted); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at

trial."). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict

for the non-moving party." *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 2017

WL 1836435, at *7.

## ARGUMENT

Mr. Holtsclaw alleges that his Testim use caused his heart attack. He asserts claims

against Auxilium, Endo, and GSK for strict liability - design defect, strict liability - failure to

warn, negligence, negligent misrepresentation, breach of implied warranty of merchantability,

breach of implied warranty of fitness for a particular purpose, breach of express warranty, fraud,

and violation of the TCPA.[4] Master Short-Form Compl. ¶ 17, ECF No. 1. He seeks to recover

compensatory and punitive damages. Summary judgment is appropriate because Plaintiff cannot

establish essential elements of each of his claims and, therefore, no reasonable jury could return

a verdict for him.

## I.     PLAINTIFF CANNOT SATISFY HIS BURDEN TO PROVE CAUSATION, WHICH IS AN ESSENTIAL ELEMENT OF EACH OF HIS CLAIMS

Plaintiff's claims are governed by the TPLA. *See* Tenn. Code Ann. § 29-28-101, *et seq.*

Under that statute, "[c]ausation [is] an essential element of any products liability action." *Nye v.*

*Bayer Cropscience, Inc.*, 347 S.W.3d 686, 704 (Tenn. 2011). To recover, a "plaintiff has the

---

[4] By stipulation, Plaintiff has dismissed his claim for strict liability - manufacturing defect. ECF
No. 33

burden of showing that the alleged 'defect in the product [was the] cause in fact of the injury.'" *Pride v. BIC Corp.*, 218 F.3d 566, 580 (6th Cir. 2000) (citation omitted); *accord Richardson v. GlaxoSmithKline*, 412 F. Supp. 2d 863, 868 (W.D. Tenn. 2006) ("[A] plaintiff must show that 'the product manufactured and sold by the defendant proximately caused the injuries [he] allege[s] to have sustained.'" (citations omitted)).

"In a products liability action, a plaintiff must prove both general and specific causation." *Nozinich v. Johnson & Johnson, Inc.*, No. 09-02015 DKV, 2011 WL 13124085, at *5 (W.D. Tenn. July 6, 2011). "General causation is 'whether a substance is capable of causing an injury or condition in the general population,' and specific causation is whether a product caused a particular person's alleged injury." *Id.* Where, as here, "the issue of causation is not within a lay person's knowledge, testimony of an expert witness is necessary." *Id.*

As explained in Defendants' contemporaneously filed motion to exclude Plaintiffs' expert testimony, the testimony of Dr. Hossein Ardehali that Testim caused Mr. Holtsclaw's heart attack should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Absent Dr. Ardehali's testimony, Plaintiff cannot establish the essential element of all of his claims that Testim proximately caused his heart attack. *See Downs v. Perstorp Components, Inc.*, 26 Fed. App'x. 472, 477 (6th Cir. 2012) ("The district court correctly concluded that, without admissible expert testimony on causation, no reasonable jury could find for plaintiffs because Tennessee law requires proof of causation for both strict liability and negligence actions."); *Richardson*, 412 F. Supp. 2d at 871 ("Because he has not offered any expert testimony establishing that Paxil is the proximate cause of the injuries he suffered as a result of his suicide attempts, [plaintiff] cannot establish a key element of his claim

under the Tennessee Product Liability Act;" granting summary judgment). Accordingly, the

Court should grant summary judgment on each of Plaintiff's claims.

## II.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON EACH OF PLAINTIFF'S CLAIMS FOR REASONS INDEPENDENT OF HIS FAILURE TO ESTABLISH CAUSATION

Even if Plaintiff could raise a genuine issue of material fact as to whether Testim caused

his heart attack, the Court should grant summary judgment on each of his claims for the

independent reasons described below.

### A.   The Court Should Grant Summary Judgment on Plaintiff's Design Defect Claim Because Plaintiff Cannot Satisfy His Burden to Identify any Such Defect

Under Tennessee law, "[t]he burden is on the plaintiff to identify a defect in the product."

*Langford v. Gatlinburg Real Estate & Rental, Inc.*, 499 F. Supp. 2d 1042, 1051 (E.D. Tenn.

2007). "The mere fact that an injury or damage occurred is not proof that the product is

defective." *Id.*; *accord Fulton v. Pfizer Hosp. Prods. Group, Inc.*, 872 S.W.2d 908, 911 (Tenn.

Ct. App. 1993) ("As a general rule, an injury of itself is not proof of a defect and thereby raises

no presumption of defectiveness.") Even if, contrary to fact, it were true that Plaintiff was

injured from his Testim use, that would not establish that Testim was defective.

Plaintiff's allegations, evidence, and experts do not challenge Testim's FDA-approved

design. "[A] product asserted to have a defective design meets the manufacturer's design

specifications but raises the question whether the specifications themselves create unreasonable

risks." Restatement (Third) of Torts: Products Liability § 2, comment d (1998).[5] Plaintiff does

not claim that Testim should have a different chemical formulation, different dosing

---

[5] The Supreme Court of Tennessee "has previously looked to the Restatement Third for guidance as to tort law in Tennessee." *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 904 n.3 (Tenn. 2011).

requirements, or otherwise challenge Testim's specifications.  Instead, for his design defect

claim, Plaintiff alleges:

> Defendants manufactured, sold and promoted these drugs to treat a non-existent
> medical condition that they called 'Low T,' which was a name they created for
> the constellation of symptoms experienced by men as a result of the normal again
> process.  In essence Defendants marketed and sold TRT as lifestyle drugs meant
> to make men feel younger and increase libido.

Fourth Amended Master Long-Form Compl. ¶ 469.

As the Court held in granting summary judgment on certain design defect claims asserted

in the AbbVie bellwether cases, Plaintiff's design defect claim is "actually just a repackaging of

[his] off-label marketing claims—that [Defendants] never should have promoted [Testim] for use

by individuals with age-related hypogonadism or 'Low T.'"  *In re Testosterone Replacement*

*Therapy Prods. Liab. Litig.*, Case No. 14 C 1748, 2017 WL 1836435, at \*20 (N.D. Ill. May 8,

2017).  Here too, the Court should grant summary judgment because Plaintiff's design defect

claim does not identify any defect in the design of Testim.

> ### B.  The Court Should Grant Summary Judgment on Plaintiff's Fraud and Negligent Misrepresentation Claims Because Plaintiff Cannot Satisfy His Burden to Show That Dr. McLaughlin Prescribed Testim in Reliance on any Alleged Misrepresentation by Auxilium

Reliance is an essential element of claims for both fraud and negligent misrepresentation

under Tennessee law.  *See Carter v. Danek Med., Inc.*, No. CIV. 96-3243-G, 1999 WL

33537317, at \*5 (W.D. Tenn. June 3, 1999).  Tennessee adheres to the learned intermediary

doctrine under which "the manufacturer of an unavoidably unsafe prescription drug can

discharge its duty to warn by providing the physician with adequate warnings of the risks

associated with the use of its drug."  *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 429 (Tenn. 1994).

Thus, to prove his fraud and negligent misrepresentation claims (and other claims arising from

the alleged inadequacy of warnings accompanying Testim), Plaintiff must prove that his prescribing physician, Dr. McLaughlin, received and relied on the alleged misrepresentations.

For example, in *Carter*, the court granted summary judgment for a medical device manufacturer where the plaintiff "provided no evidence that his physician . . . relied upon any misrepresentations to the FDA" or "upon any information disclosed or not disclosed by [the manufacturer] at any seminars, presentations, or through literature provided by [the manufacturer]" in deciding to implant the medical device that allegedly caused plaintiff's injury. *Carter*, 1999 WL 33537317, at \*5–7; *see also Hafer v. Medtronic, Inc.*, 99 F. Supp. 3d 844, 859 (W.D. Tenn. 2015) (dismissing fraud and negligent misrepresentation claims for failure to "state with particularity which misrepresentations that the Plaintiffs (or their doctors) relied upon").

Based on the undisputed facts here, Plaintiff cannot satisfy his burden to show that Dr. McLaughlin relied on any alleged misrepresentation made by Auxilium. Dr. McLaughlin's testimony precludes such a showing.

> Q. Well, in your opinion—in your recollection, was there ever any time when a manufacturer's representative with regard to Testim gave you any information you thought was false or inaccurate?
>
> A. No.
>
> Q. Was there ever any time that you met with a manufacturer's representative for Testim where the manufacturer's representative suggested that you prescribe it for some off-label indication?
>
> A. No.

Ex. 1 at 105:13–23.

In particular, Dr. McLaughlin testified that Auxilium representatives did ***not*** tell him that Testim was indicated for the treatment of erectile dysfunction, diabetes, opioid addiction, sexual dysfunction, age-related low level testosterone, or to improve lean body mass. *Id.* at 106:10–

10

108:2.  He further testified that he does not remember any Auxilium sales representatives telling him which types of patients he should test to check whether the patient had hypogonadism or that 50 percent of men with diabetes have low testosterone.  *Id.* at 133:5–134:12.  And although he recalled being provided with the "ADAM" questionnaire, he does not use it in his practice and, moreover, Dr. McLaughlin did not identify Auxilium sales or other representatives as his source for those questionnaires.  *Id.* at 135:5–16.

Even if Mr. Holtsclaw's reliance were at issue (which it is not under the learned intermediary doctrine), that would not save his fraud and negligent misrepresentation claims.

███████████████████████████████████████████████████████████

Ex. 2 at 242:10–12.  He had not heard of Testim prior to being prescribed it and he had not seen any Testim advertisements prior to or during his use of Testim.  *Id.* at 29:19–21, 180:4–11, 240:20–241:5, 241:17-242:9.  He did not rely on any representations from Auxilium.

Accordingly, the Court should grant summary judgment on Plaintiff's fraud and negligent misrepresentation because it is undisputed that neither his prescribing physician nor Mr. Holtsclaw relied on any alleged Auxilium misrepresentation regarding Testim.

C. **The Court Should Grant Summary Judgment on Plaintiff's Claim for Breach of Express Warranty Because Plaintiff Cannot Satisfy His Burden to Identify any False Affirmation of Fact**

"In order to establish a prima facie claim for breach of express warranty in Tennessee, a plaintiff must prove that:  (1) the seller made an affirmation of fact intending to induce the buyer to purchase the goods, (2) the buyer was in fact induced by the seller's acts, and (3) the affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty."  *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 395 (6th Cir. 2013).  In *Strayhorn*, the Sixth Circuit held that plaintiffs could not prove breach of express warranty based on allegations that a medicine's labeling should have disclosed risks associated with long-term

treatment because plaintiffs "d[id] not identify any affirmation of fact made on the product labeling that they allege to be *false*; rather, they allege[d] that the labeling was *inadequate*." *Id.* (emphasis in original).

Here too, Plaintiff does not identify any affirmation of fact on Testim's labeling that he claims was false. Instead, he contends that the labeling was inadequate because it should have disclosed alleged cardiovascular risks. And, to the extent he relies on statements in advertising or promotional material, as detailed above, the undisputed evidence shows that Dr. McLaughlin was not induced to prescribe Testim and Mr. Holtsclaw was not induced to use Testim by any such statement. Accordingly, the Court should grant summary judgment on Plaintiff's claim for breach of express warranty.

> **D.** **The Court Should Grant Summary Judgment on Plaintiff's TCPA Claim Because that Statute Does Not Permit Recovery of Personal Injury Damages**

"A TCPA claim must be dismissed where a plaintiff seeks to recover for injuries to his person resulting from [a defendant's] alleged violation of the TCPA." *Fleming v. Janssen Pharm., Inc.*, 186 F. Supp. 3d 826, 834 (W.D. Tenn. 2016) (citations and internal quotation marks omitted). To the extent that Plaintiff seeks economic damages for medical treatment for his heart attack, those damages "'do not exist[] independently of the personal injuries that he suffered,'" and, therefore, are not recoverable under the TCPA. *Id.* (citation omitted).

Here, Mr. Holtsclaw seeks damages for personal injuries allegedly caused by his Testim use and economic damages for medical expenses incurred related to his injury. Master Short-Form Compl. ¶ 14. The Court should grant summary judgment on his TCPA claim because claims for personal injury damages are not permissible under the statute.

### III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF ENDO AND GSK

#### A.   Endo and GSK Did Not Manufacture or Sell Testim

"[A] claim falling under the definition of a 'product liability action' [in the TPLA] may be asserted only against the manufacturer or the seller of the product that harmed the plaintiff." *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 403 (6th Cir. 2013); *see also* Tenn. Code Ann. § 29-28-106 (With few exceptions, "[n]o product liability action . . . shall be commenced or maintained against any seller, other than the manufacturer.").[6]  In *Strayhorn*, the Sixth Circuit held that brand name pharmaceutical manufacturers could not be held liable under the TPLA for injuries allegedly caused by use of generic forms of their medicines because "these defendants were not the manufacturers or sellers of the generic drugs that injured the plaintiffs."  *Strayhorn*, 737 F.3d at 404.  The same result is warranted here, because neither Endo nor GSK manufactured or sold Testim.

At all relevant times after FDA approved Testim for marketing on October 31, 2002 and before Mr. Holtsclaw stopped using Testim in July 2014, Auxilium manufactured and sold Testim.  Endo acquired Auxilium in January 2015 after Mr. Holtsclaw's Testim use and his heart attack.  Even had Endo acquired Auxilium before the events at issue in this case, it would not be liable to Plaintiff.  It is well-settled that "liability does not automatically confer to parents of subsidiary corporations."  *BP Environmental Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 413 (E.D. Pa. 2013); *United States v. Am. Mercantile Corp.*, 889 F. Supp. 2d 1058, 1073

---

[6] A "'[m]anufacturer' means the designer, fabricator, producer, compounder, processor or assembler of a product or its component parts."  Tenn. Code Ann. § 29-28-102(4).  A "'[s]eller' includes a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption.  'Seller' also includes a lessor or bailor engaged in the business of leasing or bailment of a product."  Tenn. Code Ann. § 29-28-102(7).

(W.D. Tenn. 2012) ("[B]oth parent and subsidiary cannot be liable for the acts of only one of the corporations in the parent-subsidiary relationship."). There is no evidence to support the application of any exception to that principle to render Endo liable for the acts of Auxilium. Accordingly, the Court should grant summary judgment for Endo on all of Plaintiff's claims.

GSK also did not manufacture or sell Testim. It was a party to a co-promotion agreement with Auxilium from May 2012 until August 2013. The co-promotion agreement did not render GSK a manufacturer or seller of Testim for the short period of time that the agreement was in effect. *See, e.g.*, *Memphis Bank & Trust Co. v. Water Servs., Inc.*, 758 S.W.2d 525, 526 (Tenn. 1988) (sales representative was not manufacturer or seller within meaning of TPLA). But even if, contrary to fact and law, GSK was deemed a manufacturer or seller of Testim by virtue of the co-promotion agreement, GSK would not be liable to Plaintiff because that status would have terminated in August 2013—before Mr. Holtsclaw used Testim—when GSK's relationship with Auxilium terminated. Even if, contrary to fact, GSK was a seller of Testim at any relevant time, there is no evidence to support the application of any exception to overcome the immunity conferred by Tennessee law on sellers that are not also manufacturers. *See* Tenn. Code Ann. § 29-28-106. Accordingly, the Court should grant summary judgment for GSK on all of Plaintiff's claims.

### B. Plaintiff's Expert Admits that GSK Did Not Do Anything that Could Render it Liable

Even aside from the fact that GSK did not manufacture or sell Testim, there is no factual basis arising from its promotional activities that might support liability. Plaintiff's expert, Dr. Peggy Pence, admitted as much:

> Q. In your report, you discuss a co-promotional agreement between Auxilium and GSK; correct?
>
> A. That's correct.

14

Q.     And are you offering any opinions that may, in your opinion, make GSK
liable in this case?

A.     No.

. . .

Q.     But you're not offering any opinions that GSK did anything wrong;
correct?

A.     That's correct.

Pence Dep. ("Ex. 12") at 352:11–24.

Accordingly, the Court should grant summary judgment for GSK for that additional

reason.[7]

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion for summary

judgment on state law grounds.

Dated: September 11, 2017          Respectfully submitted,

                                  */s/ Andrew K. Solow*
                                  Andrew K. Solow (*pro hac vice*)
                                  **ARNOLD & PORTER KAYE SCHOLER LLP**
                                  25O West 55th Street
                                  New York, NY 10019-9710
                                  Phone:  (212) 836-7740
                                  Fax:  (212) 836-6776
                                  Email:  andrew.solow@apks.com

                                  Pamela J. Yates (*pro hac vice*)

---

[7] Because Mr. Holtsclaw cannot establish liability on any of his substantive claims against any
Defendant, he cannot recover punitive damages.  *See  Rotello v. Clayton Homes of Del., Inc.*, No.
3:03-CV-573, 2006 WL 2771078, at *2 n.2 (E.D. Tenn. Sept. 25, 2006) ("[A] plaintiff cannot be
awarded punitive damages when no actual damages have been sustained or suffered.");
*Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 802 (Pa. 1989) ("Since punitive damages
are an element of damages arising out of the initial cause of action, if that cause of action is
dismissed, the punitive damages which are incident to actual damages cannot stand.").

**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Phone: (213) 243-4178
Fax: (213) 243-4199
Email: pamela.yates@apks.com

*Attorneys for Endo Pharmaceuticals Inc.,
Auxilium Pharmaceuticals, LLC (f/k/a Auxilium
Pharmaceuticals, Inc.), and GlaxoSmithKline
LLC*

**CERTIFICATE OF SERVICE**

I, Andrew K. Solow, certify that on September 11, 2017, I served a true and correct copy

of the foregoing Defendants' Motion and Memorandum of Law in Support of Their Motion for

Summary Judgment on State Law Grounds counsel of record by electronic notice through the

CM/ECF system of the United States District Court for the Northern District of Illinois.

Dated: September 11, 2017                    */s/ Andrew K. Solow*_____
                                             Andrew K. Solow (*pro hac vice*)