IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 |
| | Master Docket Case No. 1:14-cv-01748 |
| | Honorable Matthew F. Kennelly |
| This document applies to: | |
| *Holtsclaw v. Endo Pharmaceuticals, Inc., et al.,* Case No. 1:15-cv-3941 | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF DEFENDANT AUXILIUM FOR SUMMARY JUDGMENT ON STATE LAW GROUNDS**

Ronald Johnson, Jr.
SCHACHTER, HENDY & JOHNSON PSC
909 Wrights Summit Parkway, Suite 210
Ft. Wright, KY 41011
Phone: (859) 578-4444
Fax: (859) 578-4440
Email: rjohnson@pschacter.com

Trent B. Miracle
SIMMONS HANLY CONROY
One Court Street
Alton, IL 62002
Phone: (618) 259-2222
Fax: (618) 259-2252
Email: tmiracle@simmonsfirm.com

Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
Email: cseeger@seegerweiss.com

Plaintiffs' Co-Lead Counsel *on behalf of* Plaintiffs' Steering Committee

October 2, 2017

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ......................................................................................................... II

INTRODUCTION ..................................................................................................................... 3

LEGAL STANDARD ................................................................................................................ 4

ARGUMENT ........................................................................................................................... 5

I.     PLAINTIFF WILL PROVE CAUSATION THROUGH THE EXPERT OPINION OF DR. HOSSEIN ARDEHALI .................................................................................................. 5

II.    DISPUTED ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT FOR AUXILIUM ON PLAINTIFF'S FRAUD-BASED CLAIMS AS WELL AS ON HIS EXPRESS WARRANTY, DESIGN DEFECT, AND CONSUMER FRAUD CLAIMS ................................................... 6

     A.     Dr. McLaughlin Testified That He Relied on Information Provided by Auxilium Such That Summary Judgment on Fraud and Negligent Misrepresentation Must be Denied .............................................................. 6

     B.     Disputed Issues of Fact Preclude Summary Judgment on the Express Warranty Because the Evidence Shows that Auxilium Falsely Represented that "Low T" was a Condition in Need of Treatment and that Testim was a Safe and Effective Treatment for Age-Related Reduced Testosterone Levels .................................................................. 10

     C.     Auxilium Is Not Entitled to Judgment with Respect to Plaintiff's Claim for Design Defect .......................................................................... 11

     D.     Plaintiff Properly Seeks Economic Losses through His Consumer Fraud Claim .................................................................................... 12

     E.     Preemption Does Not Apply for the Reasons Set Forth in Plaintiff's Preemption Response ................................................................... 13

     F.     Because Plaintiff Can Establish Liability on His Substantive Claims, He May Also Recover Punitive Damages ............................................. 13

III.    ENDO IS NOT ENTITLED TO SUMMARY JUDGMENT ............................................... 14

CONCLUSION ...................................................................................................................... 17

CERTIFICATE OF SERVICE .................................................................................................. 19

i

# TABLE OF AUTHORITIES

*Page*

## Cases

*Camreta v. Greene*, 563 U.S. 692, 709 (2011) ............................................................ 12

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ........................................... 5

*Estate of Mitchell v. Allen Family Foods, Inc.*, 2013 WL 870664 (Del. Super., March 1, 2013) 16

*Fleming v. Johnson*, 186 F. Supp. 3d 826 (W.D. Tenn. 2016) ....................................... 12

*Harwell v. Am. Med. Sys., Inc.*, 803 F. Supp. 1287 (M.D. Tenn. 1992) ........................ 11

*Hopewell Baptist Church v. Southeast Window Mfg. Co., LLC*, 2001 WL 708850 (Tenn. Ct. App., June 25, 2001) ................................................................................................. 16

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069 (S.D. Ind. July 27, 2001) .................................................................................................................. 12

*Lorentz v. Deardan*, 834 S.W.2d 316 (Tenn. Ct. App. 1992) ....................................... 13

*McGreal v. Ostrov*, 368 F.3d 657  (7th Cir. 2004) ......................................................... 9

*Meals v. Ford Motor Co.*, 417 S.W.3d 414 (Tenn. 2013) ............................................ 13

*Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758 (Tenn. 2006) .............................. 5

*Putt v. Yates-American Machine Co.*, 722 A.2d 217 (Pa. Super. 1998) ........................ 16

*Sheppard v. A.C. and S. Co., Inc.*, 484 A.2d 521 (Del. Super. 1984) ........................... 16

*Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 748 (N.D. Ill. 2010) ......................... 14, 15

*State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666 (7th Cir. 2001) ....................... 12

*Tolliver v. City of Chicago*, 821 F.3d 237 (7th Cir. 2016) .............................................. 9

*Townsend v. Sears, Roebuck and Co.*, 879 N.E.2d 893 (Ill. 2007) ........................ 14, 15

*United States v. King-Vassel*, 728 F.3d 707 (7th Cir. 2013) ......................................... 9

## Statutes

Federal Rule of Evidence 702 .......................................................................................... 5

Federal Rules of Evidence 403 ....................................................................................... 5

## Other Authorities

Restatement (Second) of Conflict of Laws, § 6 ............................................................ 15

Tenn. Code Ann. § 24-5-113 ......................................................................................... 13

Tenn. Code Ann. § 47–18–109(a)(1) ............................................................................ 12

Uniform Commercial Code §2-313(1)(a) ...................................................................... 10

## Treatises

MOORE'S FEDERAL PRACTICE § 134.02[1] [d] (3d ed. 2011) ....................................... 12

## INTRODUCTION

Defendants Auxilium Pharmaceuticals, LLC (f/k/a Auxilium Pharmaceuticals, Inc. and referenced hereinafter as "Auxilium" or "Defendant"), Endo Pharmaceuticals Inc., and GlaxoSmithKline LLC seek summary judgment on the claims brought by Plaintiff Steven Holtsclaw with respect to Auxilium's testosterone replacement therapy ("TRT") product Testim. The motion should be denied because disputed issues of fact preclude summary judgment for Auxilium.[1]

Auxilium first argues that all of Plaintiff's claims fail because Plaintiff cannot offer expert testimony to establish specific causation. This is so, Auxilium concedes, only if the Court grants Auxilium's separate motion to exclude the testimony of various of Plaintiff's experts, including his specific causation expert, Dr. Hossein Ardehali. For the reasons set forth in Plaintiff's opposition to the motion to exclude expert testimony, Dr. Ardehali's testimony is reliable and admissible and should not be excluded. Auxilium does not raise any additional arguments regarding Plaintiff's claims for strict liability (failure to warn), negligence, and breaches of implied warranties of merchantability and of fitness for a particular purpose. Thus, to the extent that the Court denies Auxilium's motion to exclude Dr. Ardehali's specific-causation opinion, there is no

---

[1] In *Holtsclaw*, Plaintiff named GlaxoSmithKline, LLC ("GSK") as a Defendant, but the Court need not reach the merits of its requested dismissal. Plaintiff consents to dismissal. However, and importantly, it must be noted that GSK had relevant and admissible involvement with the marketing and promotion of Testim. Specifically, beginning in 2012, GSK entered into a co-promotion agreement with Auxilium for Testim. The co-promotion agreement contained indemnification clauses requiring GSK to indemnify Auxilium under certain circumstances and for Auxilium to indemnify GSK under other circumstances. It also required Auxilium to submit all of its promotional materials to GSK for review by its medical/legal/regulatory team. In the course of that agreement, GSK informed Auxilium that it believed some of Auxilium's promotional tactics violated FDA regulations and could no longer be used during the term of the agreement. Thus, GSK's employees remain vital factual witnesses to Auxilium's conduct that is the subject of Plaintiff's claims.

basis, and indeed no motion, for summary judgment on Mr. Holtsclaw's failure to warn, negligence, and implied warranty claims.

Auxilium does make several claim-specific arguments with respect to Mr. Holtclaw's claims for strict liability (design defect), breach of express warranty, negligent misrepresentation, fraud, and violation of the Tennessee Consumer Protection Act ("TCPA"). This portion of Auxilium's motion should also be denied. The testimony of Plaintiff's prescribing physician, Marion Dean McLaughlin, MD, that he relied on information provided by Auxilium creates a disputed issue of fact precluding summary judgment for Auxilium on the claims for negligent misrepresentation and fraud. Similarly, Plaintiff has presented evidence sufficient for a reasonable jury to find that Auxilium, through its marketing, specifically and falsely affirmed and represented to consumers that (1) "low T" was a condition in need of treatment and (2) Testim was safe and an effective treatment for age-related reduced testosterone levels and associated symptoms. For this reason, summary judgment with respect to the express warranty claim is not appropriate. Auxilium's argument with respect to Mr. Holtsclaw's design defect is based on this Court's prior ruling with respect to *negligent* design defect. Because the claim Mr. Holtsclaw has pleaded is for strict liability design defect, this Court's prior ruling *upholding* such claims is applicable and precludes summary judgment. Finally, as this Court has previously recognized, Defendant is not entitled to summary judgment on Plaintiff's Tennessee consumer fraud claim because the economic losses for which he seeks recovery are distinct from his claims for personal injury-type damages.

## LEGAL STANDARD

This Court has set forth the legal standard to be applied on a motion for summary judgment in its ruling on the AbbVie Defendants' motion for summary judgment on failure to warn claims. *See* CMO 47, Dkt. No. 1896 (May 8, 2017) at 15.

4

## ARGUMENT

### I. PLAINTIFF WILL PROVE CAUSATION THROUGH THE EXPERT OPINION OF DR. HOSSEIN ARDEHALI

Auxilium argues that Plaintiff has failed to offer any expert testimony on the issue of medical causation that satisfies the requirements for admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). As discussed in greater detail in Plaintiff's contemporaneously filed Memorandum of Law in Opposition to Motion of Auxilium Defendants to Exclude Testimony under Federal Rules of Evidence 702 and 403, this argument should be rejected because Auxilium has not challenged Dr. Ardehali's general causation opinion and his specific causation opinion is grounded in a reliable and well-accepted methodology, differential etiology, which he properly performed.

Under Tennessee law, Mr. Holtsclaw need not prove that AndroGel was the only cause of his heart attack, but instead, he must demonstrate only "that the alleged conduct of the defendants [was] a substantial factor in causing the injury complained about." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 771 (Tenn. 2006). Dr. Ardehali's report concerning Mr. Holtsclaw explains why Testim was a "substantial factor" in causing Mr. Holtsclaw's "acute clotting event because of its effects on coagulation under circumstances of a systemic chronic inflammatory disease." Holtsclaw Report at 12. Dr. Ardehali specifically accounts for Mr. Holtsclaw's various risk factors that worked together with the pro-thrombotic effects of testosterone to cause Mr. Holtsclaw's heart attack.

Auxilium's summary judgment motion presents neither the evidence nor the law necessary to meet its burden and its request for summary judgment on the issue of causation should be denied.

## II. DISPUTED ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT FOR AUXILIUM ON PLAINTIFF'S FRAUD-BASED CLAIMS AS WELL AS ON HIS EXPRESS WARRANTY, DESIGN DEFECT, AND CONSUMER FRAUD CLAIMS

### A. Dr. McLaughlin Testified That He Relied on Information Provided by Auxilium Such That Summary Judgment on Fraud and Negligent Misrepresentation Must be Denied

Auxilium asserts that Plaintiff's fraud and negligent misrepresentation claims fail because he cannot establish that his prescribing physician, Marion Dean McLaughlin, MD relied on any misrepresentation by Auxilium in prescribing Testim to Mr. Holtsclaw. But as this Court noted before, "[a] plaintiff need not show that his (or … his physician's) reliance was the sole or even the predominant influence; rather, it is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." CMO 48, Dkt. No. 1897 (May 8, 2017) at 18 (internal citation omitted). "[E]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is justified is a question of fact." *Id.* (citation omitted). Here, the evidence is more than sufficient to support a jury finding that Dr. McLaughlin relied on Auxilium's misrepresentations regarding the safety and efficacy of Testim when he prescribed the drug for Mr. Holtsclaw.

Auxilium engaged in an unfettered off-label marketing campaign for Testim, stretching over approximately a decade, and that campaign undeniably forced its way into Dr. McLaughlin's office Dr. McLaughlin was exposed to—and believed—Auxilium's off-label marketing claims that Testim was an appropriate treatment for a variety of claims related to aging in men who never had classical hypogonadism.

As discussed in greater length in Plaintiffs' contemporaneously filed *Daubert* response brief, there is no evidence that TRT products provide any benefit in men with age-related declines in testosterone, and the FDA never approved any TRT products for that use. Yet, remarkably, Dr. McLaughlin's sworn testimony repeated Auxilium's point-for-point marketing message: he

6

believed that lack of libido, decreased energy, fatigue, and muscle loss, all of which are symptoms of aging, are symptoms of "hypogonadism." *See* McLaughlin Tr., Ex. 1 at 22:7-24:23. He believed that for men with these symptoms, TRT products provide a treatment option. *Id*. at 27:12-16; 59:22-60:16. He believed that Testim alleviates the symptoms he described. *Id*. at 26:3-12; 57:12-22. Given the lack of scientific support for these beliefs—and statements from the FDA emphasizing the lack of scientific support for these claims—a jury could conclude that Auxilium false advertising was the source of these beliefs. A true story may emanate from many places, but a particular falsehood is more easily traced back to its source. Dr. McLaughlin could have learned the truth about testosterone from many sources unconnected to Auxilium, but the "Low-T" story bears the signature of Auxilium and other TRT product manufacturers.

Dr. McLaughlin testified unequivocally that he prescribed Testim to Mr. Holtsclaw for his fatigue. Ex. 1 at 40:21-45:8, 48:9-15; 54:12-21; 57:3-22. Dr. McLaughlin understood testosterone replacement therapy was suitable, irrespective of blood serum lab values, for fatigue, weight changes, dry skin, irritability, decreased muscle mass, erectile dysfunction, loss of libido, depression, and decreased body hair. *Id.* at 22:7-24:23.

The misrepresentations at issue thus include: (1) that "low testosterone" was a disease, (2) that age-related "low T" should be treated, even without discovering the underlying condition; (3) that, based on a testosterone measurement alone and vague symptoms such as loss of energy or depression, Testim could be prescribed without a full endocrinology workup and without a diagnosis of the cause of the lab test; and (4) that testosterone could be safely prescribed and was appropriate for treating low energy and weight gain. Dr. McLaughlin prescribed Testim based only on a vague complaint of fatigue.

Moreover, a jury could conclude that information provided by Auxilium was the source of Dr. McLaughlin's beliefs. Prior to July 3, 2014, Testim sales representatives called on Dr. McLaughlin in his office at least 98 times. *See* Ex. 2; Ex. 3 at 7. These office calls included at least ten sales presentations about Testim during which Dr. McLaughlin was provided a meal. *See* Ex. 5. During these sales calls, Testim sales representatives provided copies of company-approved Testim promotional materials to Dr. McLaughlin. *See* Ex. 4; Ex. 1 at 101:9-12. Dr. McLaughlin testified that he was provided with Testim brochures by Testim sales representatives. *See* Ex. 1 at 131:18-132:12. He also recalled being provided the ADAM questionnaire. *Id*. at 135:5-16. Dr. McLaughlin testified that he relies on Auxilium to provide him with accurate information about Testim's risks and benefits. *Id.* at 117:24-121:24. Dr. McLaughlin testified that he relied, in part, on information he received from Auxilium's sales representatives. *Id*. at 117:24-118:4; 119:19-121:17; 123:4-124:7. He believed that they had never provided him with information that was false or inaccurate, *see id.* at 105:13-23; in other words, he believed that everything they told him was true.

This evidence is sufficient that a jury could find that the off-label marketing campaigns affected Mr. Holtsclaw's prescriber's decision to prescribe Testim. While Dr. McLaughlin testified that he did not base his decision entirely on information from sales representatives, that is not required– "substantial factor" is the standard, not total and complete reliance to the exclusion of everything else. Moreover, the ultimate question is not whether Dr. McLaughlin subjectively *believed* Auxilium was making a misrepresentation to him, but rather, whether he, in fact, relied on what Auxilium told him. A jury could find that Auxilium's promotional materials and sales messages were sufficient to convince him that there was a condition called "Low T" associated

8

with loss of energy or fatigue, and that patients like Mr. Holtsclaw would benefit from taking the drug, irrespective of a low testosterone test.

In addition, a jury could find that Auxilium deliberately omitted information necessary to make its promotional statements truthful. Indeed, Auxilium failed to disclose that Testim never has been proven safe and effective for treatment of men with age-related hypogonadism and associated symptoms. In doing so, Auxilium misrepresented both the risks and benefits of Testim. Dr. McLaughlin weighed Testim's risks and benefits for Mr. Holtsclaw based on the information available to him, including the information he received from Auxilium. Dr. McLaughlin relied on the information provided by Auxilium to be accurate. Ex. 1 at 118:5-119:17. He testified that it is important to get accurate information about the risks and benefits of drugs. *Id.* at 119:19-120:14. He also testified that if Auxilium had information regarding the risk of myocardial infarction with Testim, he would have liked to have known that information and would have factored that into his risk-benefit assessment for Mr. Holtsclaw. *Id.* at 123:9-124:7. Ultimately, Dr. McLaughlin testified that before prescribing Testim, he made sure that Mr. Holtsclaw understood both the risks and the benefits. *Id.* at 124:16-125:2.

Together, all of this evidence is sufficient for a jury to find that Dr. McLaughlin's decision to prescribe Testim to Mr. Holtsclaw was influenced by Auxilium's marketing information and the information he was provided about Testim's risks and benefits. At the summary judgment stage, Plaintiff is entitled to all reasonable inferences and to view the evidence in the light most favorable to him. *United States v. King-Vassel*, 728 F.3d 707, 717 (7th Cir. 2013); *McGreal v. Ostrov*, 368 F.3d 657, 663 (7th Cir. 2004); *Tolliver v. City of Chicago*, 821 F.3d 237, 239 (7th Cir. 2016). Applying this standard, there are material issues of fact that preclude summary judgment.

**B.**     **Disputed Issues of Fact Preclude Summary Judgment on the Express Warranty Because the Evidence Shows that Auxilium Falsely Represented that "Low T" was a Condition in Need of Treatment and that Testim was a Safe and Effective Treatment for Age-Related Reduced Testosterone Levels**

Auxilium seeks dismissal of Plaintiff's breach of express warranty claim because it contends that Plaintiff lacks evidence of a specific affirmation or promise that could constitute an express warranty. Auxilium argues that Tennessee law requires actual reliance and the evidence would not permit a finding that Mr. Holtsclaw relied on any express warranty.[2]

Express warranties include "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Uniform Commercial Code §2-313(1)(a). Plaintiffs' Fourth Amended Master Long Form Complaint, filed June 14, 2016, identifies specific promises, namely that Defendants' TRT products treated a condition known as "Low T," that the product was safe and effective for treating "Low T," and were FDA approved to treat this condition. Plaintiff has sufficient evidence to present these claims to the jury.

For example, Auxilium's "Modern Man" physician brochure emphasizes that "low testosterone is common" in aging men. *See* Ex. 6 at 9 ("In most men, testosterone levels decrease over time, so lower levels are commonly found in men beginning in in their 40s."). Its "Talk Test Treat" physician brochure also stated that "Low testosterone is often seen in men as they age." *See* Ex. 7 at 2 ("Because testosterone levels naturally decrease over time, low testosterone (also known as low T) is commonly found as men age, even among men in their 30s and 40s."). Auxilium's official Testim website stated that Testim was an effective treatment for Low T and explained that

---

[2] Auxilium also argues that the Dr. McLaughlin was not induced to prescribe Testim by any such statement. Again, for all of the reasons described in Plaintiff's Section II.B, that argument fails.

Low T was associated with aging. *See* Ex. 8 at 373, 376-378, 382, 384; Ex. 9 at 46, 48, 51, 110, 130.

Plaintiff has presented evidence sufficient for a reasonable jury to find that Auxilium, through its marketing, specifically and falsely affirmed and represented to consumers that (1) "low T" was a condition in need of treatment; and that (2) Testim was safe and an effective treatment for natural declines in testosterone levels with age. *See* CMO 48, Dkt. No. 1897 (May 8, 2017) at 20. This evidence is sufficient to support a claim for breach of express warranty.

### C. Auxilium Is Not Entitled to Judgment with Respect to Plaintiff's Claim for Design Defect

Auxilium contends that it is entitled to summary judgment on Plaintiff's design defect claim because it argues that Plaintiff has failed to identify a defect in Testim and because this Court previously dismissed similar claims as "just a repackaging of [his] off-label marketing claims." But the Court's prior holding referred to claims for *negligent* design defect. *See* CMO 47 at 47-48. But the claim that Plaintiff Holtsclaw asserts is for *strict liability* design defect. *See* Plaintiff's Complaint, Ex. 10. In the same order on which Auxilium relies, this Court *upheld* claims for strict liability design defect, finding that Tennessee and other state courts have "held that a drug manufacturer receive[s] immunity from strict liability design defect claims only when there is no dispute regarding whether the manufacturer [has] provided adequate warnings." *See* CMO 47 at 45, *citing Harwell v. Am. Med. Sys., Inc.*, 803 F. Supp. 1287, 1300 (M.D. Tenn. 1992). For the same reasons that this Court denied summary judgment on a strict liability design defect claim under Tennessee law against AbbVie, it should deny Auxilium's motion for summary judgment on the same claim here.

### D.    Plaintiff Properly Seeks Economic Losses through His Consumer Fraud Claim

Auxilium argues that Plaintiff's consumer protection claim under the TCPA should be dismissed because personal injury claims are precluded under that statute.  To state a consumer protection cause of action, Plaintiff only need plead an economic "loss."  *See In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1097 (S.D. Ind. July 27, 2001). The TCPA provides that "[a]ny person who suffers an *ascertainable loss* of money or property ... as a result ... of an unfair or deceptive act or practice ... may bring an action individually to recover actual damages." Tenn. Code Ann. § 47–18–109(a)(1) (emphasis added). As the Court noted when AbbVie made the same argument, Plaintiff does not seek personal injury-type damages on his consumer fraud claim; rather, he seeks to recover economic losses, such as the costs of purchasing Testim.  *See* CMO 48 at 22-23; *see also* Ex. 11 at 8-9.  This is a proper form of recovery and the Court should again decline to grant summary judgment on Plaintiff's consumer protection statutory claim.

Auxilium relies for its contrary argument on *Fleming v. Johnson*, 186 F. Supp. 3d 826 (W.D. Tenn. 2016), but Plaintiff respectfully suggests that this Court's prior reasoning is sound and *Fleming* is wrongly decided.  *Fleming* is not a decision of the Tennessee courts, but rather a federal district court; it is not binding on this Court and should be rejected as unpersuasive. *See Camreta v. Greene*, 563 U.S. 692, 709 (2011) (district court decision not binding), *citing* 18 J. Moore *et al.*, MOORE'S FEDERAL PRACTICE § 134.02[1] [d], p. 134–26 (3d ed. 2011); *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001) (federal court sitting in diversity applies "the law of the state as it believes the highest court of the state would apply it. . . ."). The *Fleming* court conflated the medical expenses that the plaintiff in that case incurred following his injury from the drug he ingested with the costs of the drug itself.  186 F.Supp.3d at 834.  The

12

purchase price of a product fraudulently sold is recoverable under the consumer fraud statute regardless of whether the purchaser was actually injured by the product; those costs do not flow from any injury, but rather from the initial fraud. *See Lorentz v. Deardan*, 834 S.W.2d 316, 319 (Tenn. Ct. App. 1992) (defrauded buyer in Tennessee has right to rescind contract of sale and recover the purchase price paid). By contrast, medical expenses to treat the injury caused by the product are consequential damages of the personal injury claim. *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 419 (Tenn. 2013) (economic damages in personal injury case include out-of-pocket medical expenses); *see also* Tenn. Code Ann. § 24-5-113 (providing for recovery upon proof of "medical, hospital or doctor bills were paid or incurred because of any illness, disease, or injury"). The two are analytically distinct, as this Court has recognized.

### E. Preemption Does Not Apply for the Reasons Set Forth in Plaintiff's Preemption Response

Auxilium includes a footnote at the end of its preliminary statement arguing that all of Plaintiff's claims are preempted by federal law based for the reasons set forth in its separate motion for summary judgment on the ground of preemption. For the reasons set forth in Plaintiff's Memorandum of Law in Opposition to Motion of Auxilium Defendants for Summary Judgment on the Ground that Plaintiffs' State Law Failure-to-Warn and Design Defect Claims are Preempted by Federal Law, which is hereby incorporated by reference and to which the Court is respectfully referred, Auxilium's preemption argument should be rejected.

### F. Because Plaintiff Can Establish Liability on His Substantive Claims, He May Also Recover Punitive Damages

Auxilium also asserts in a footnote at the end of its brief that Mr. Holtsclaw cannot recover punitive damages because he cannot establish liability on any of his substantive claims. For the reasons stated above, the Court should deny Auxilium's motion for summary judgment on Plaintiff's substantive claims and, accordingly, deny summary judgment with respect to Plaintiff's

demand for punitive damages. Plaintiff also notes that the applicable law to be applied to his request for punitive damages is Pennsylvania law because the state in which the defendant is domiciled has a stronger policy interest in whether punitive damages are available. *See* CMO 47 at 50–52 (applying "most significant contacts" test); Defs.' Statement of Facts, ¶ 2 (identifying Auxilium's principal place of business as Chesterbrook, Pennsylvania).

## III. ENDO IS NOT ENTITLED TO SUMMARY JUDGMENT

Endo, Auxilium's parent company and successor, seeks summary judgment on the grounds that it did not manufacture Testim at the time of Plaintiff's injury, in July 2014. Although Endo acknowledges that it acquired Auxilium in January 2015, it contends that it cannot be held liable for a product it did not manufacture. Endo's argument fails.

Endo's argument is premised on the theory that a parent is not liable for the acts of its subsidiary. Endo cites just one Pennsylvania and one Tennessee case as support for this argument, apparently suggesting that the law of one state or the other must apply. But Endo does not acknowledge a choice-of-law issue or take any position as to which state's law should apply. Furthermore, Endo wholly ignores a third possibility: Delaware, the state whose law is identified in the "choice of law" provision of the acquisition agreement in question. *See* Agreement and Plan of Merger, dated Oct. 8, 2014, attached hereto as Exhibit 13.

It is axiomatic that a diversity court applies the choice-of-law regime of the state in which it sits, and so this Court must apply Illinois choice-of-law rules. *See Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 748 (N.D. Ill. 2010). Illinois follows the Restatement (Second) of Conflicts of Laws, and the contacts to be considered are the locations where: (1) the injury occurred; (2) the conduct giving rise to the injury occurred; (3) the parties are domiciled; and (4) parties' relationship is centered. *See Townsend v. Sears, Roebuck and Co.*, 879 N.E.2d 893, 901 (Ill. 2007).

14

Those contacts must then be evaluated in view of the policy considerations articulated in the Restatement (Second), which include most notably "the relevant policies of the forum" and "the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue." Restatement (Second) of Conflict of Laws, § 6, at 10. Importantly, while Illinois gives a "strong presumption" in favor of applying the law of the place of the injury in a personal injury action, that presumption can be overcome by showing a more or greater significant relationship to another state. *See Smith*, 753 F. Supp. 2d at 747 (citing *Townsend* 879 N.E.2d at 903). As this Court is aware, that presumption was overcome in *Smith*, and in this litigation with respect to the AbbVie defendants, where in each case this Court found that the defendant's home state law should apply on the question of punitive damages. Those outcomes were dictated by the Court's acknowledgment that the defendant's home state had greater interests in having its own law applied on the particular legal issue in question. The same is true in this situation.

As the Illinois Supreme Court has held, "a choice-of-law analysis begins by isolating the issue and defining the conflict." *Townsend*, 227 Ill. 2d at 155, 879 N.E.2d 893. The issue is whether Endo is subject to successor liability by virtue of having acquired Auxilium and having continued to market the Testim product-line. The possible sources of law are Tennessee, where the Plaintiff is domiciled; Pennsylvania, where both Auxilium and Endo are incorporated, *see* Doc. No. 1345 (4th Amd. Master Cmplt.), at *10, ¶¶ 38-39; and Delaware, the jurisdiction identified in the choice-of-law provision of the acquisition agreement between Endo and Auxilium. *See* Ex. 13 at Section 9.6(a) ("Governing Law; Attornment; Service of Process; Waiver of Jury").

The conflict arises because, under the laws of Pennsylvania and Delaware, where "[t]he successor undertakes to conduct the same manufacturing operation of the transferor's product lines

in essentially an unchanged manner" the successor may be held liable for injuries caused by the product prior to the time of the acquisition." *Putt v. Yates-American Machine Co.*, 722 A.2d 217 (Pa. Super. 1998); *accord Sheppard v. A.C. and S. Co., Inc.*, 484 A.2d 521 (Del. Super. 1984); *see also Estate of Mitchell v. Allen Family Foods, Inc.*, 2013 WL 870664, at *4 (Del. Super., March 1, 2013) (denying summary judgment on punitive damages as to successor defendant, where successor defendant continued manufacture of product and retained some of predecessor's personnel). By contrast, Plaintiff's research has not uncovered any Tennessee case law suggesting the applicability of a "product line" exception to the general rule that a successor-parent is not liable for the pre-acquisition conduct of its subsidiary-predecessor. Indeed, while the laws of Pennsylvania and Tennessee recognize that a successor is generally not liable for the obligations of its predecessor, with certain exceptions, *see generally Putt*, 722 A.2d 217; *Hopewell Baptist Church v. Southeast Window Mfg. Co., LLC*, 2001 WL 708850, *4 (Tenn. Ct. App., June 25, 2001), the law of Delaware appears to be far less settled in that area. *See*, *e.g.*, *Sheppard*, 484 A.2d 521.

Thus, under either Delaware law (which does not necessarily preclude successor liability, but which in any event recognizes for a continuing "product line" exception) or Pennsylvania law (which generally precludes successor liability, but also recognizes a "product line" exception), Plaintiff may assert his claims against Endo as successor to Auxilium because, after acquiring Auxilium, Endo continued to market Testim in essentially an unchanged manner. As noted above, however, Tennessee does not appear to have recognized (or rejected) the product-line exception. The question for the Court is which state's law applies.

Although the law of Plaintiff's home-state of Tennessee clearly applies to each of his substantive products liability claims, applying the principles of the Restatement (Second) of Conflicts, there is no reason that Tennessee law should apply to the question of successor liability

as between two Pennsylvania entities, the terms of whose merger agreement specifically purport to subject them to Delaware law.  In short, Tennessee has absolutely no interest in having its successor liability law apply under the circumstances.  This is especially true because in this instance, application of Tennessee law may preclude recovery for a Tennessee resident while protecting domiciliaries of Pennsylvania.  Nor would application of Tennessee law serve any interest of Pennsylvania or Delaware, neither of which has chosen to protect its corporate domiciliaries from successor liability where the product-line exception applies.  Just as Pennsylvania has the strongest interest in application of its punitive damages law vis-à-vis Auxilium, either Pennsylvania or Delaware law should govern Endo's undisputed continuation of the Testim product line. *See* Testim's Prescribing Information and Medication Guide, Ex. 13 at 20, 26.  Under either law, Endo is thus answerable for any of Auxilium's liabilities.

## CONCLUSION

For the foregoing reasons, this Court should deny Auxilium's motion for summary judgment.

Dated:  October 2, 2017                    Respectfully submitted,


*/s/ Trent B. Miracle*
Trent B. Miracle
SIMMONS HANLY CONROY
One Court Street
Alton, IL 62002
Phone: (618) 259-2222
Fax: (618) 259-2252
Email: tmiracle@simmonsfirm.com

Ronald Johnson, Jr.
SCHACHTER, HENDY & JOHNSON PSC
909 Wrights Summit Parkway, Suite 210
Ft. Wright, KY 41011
Phone: (859) 578-4444
Fax: (859) 578-4440

17

Email: rjohnson@pschacter.com

Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
Email: cseeger@seegerweiss.com

Plaintiffs' Co-Lead Counsel *on behalf of* Plaintiffs'
Steering Committee

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2017, I electronically transmitted the foregoing document to the Clerk of the United States District Court using the CM/ECF system for filing and service to all parties/counsel registered to received copies in this case.

*/s/ Brendan A. Smith*
Brendan A. Smith